```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VIAHEALTH OF WAYNE CO. et al.,

                    Plaintiffs,              07-CV-6638T

           v.                                **DECISION**
                                             **and ORDER**
CHARLES E. JOHNSON, Acting Secretary
of Health and Human Services,

                    Defendant.
_____
```

## INTRODUCTION

Plaintiffs ViaHealth of Wayne County (F/K/A Newark Wayne Community Hospital), Lakeside Memorial Hospital, Geneva General Hospital, F.F. Thompson Hospital, Rochester General Hospital, ("RGH"), Unity Hospital (F/K/A Park Ridge Hospital, Nicholas H. Noyes Memorial Hospital, Clifton Springs Hospital & Clinic, and Strong Memorial Hospital of Rochester (collectively "the hospitals") bring this action against defendant Charles E. Johnson, Acting Secretary of the United States Department of Health and Human Services, ("the Secretary") claiming that they have not been properly reimbursed through the Medicare and Medicaid programs for services provided to hospital patients covered by those programs for fiscal year 2003. Specifically, the hospitals claim that the Secretary miscalculated the hospitals' collective wage index (a numerical value upon which reimbursement rates are calculated) by improperly including the hours of certain employees of Rochester General Hospital as working hours--when in fact those employees

were not working, but instead were receiving short term disability benefits. The hospitals claim that because hours that were included in the wage index calculation should not have been included, the collective wage index for all of the plaintiff hospitals was improperly deflated, and as a result, the hospitals received less in reimbursements than they were entitled to.

Plaintiffs now move for summary judgment against the Secretary claiming that there are no material issues of fact in dispute, and that as a matter of law, they are entitled to judgment in their favor. The Secretary cross-moves for summary judgment on grounds that he properly determined the plaintiffs' reimbursement rate, and therefore, his determination must stand as a matter of law.

For the reasons set forth below, I find that the Secretary's calculation the hospitals' collective wage index was arbitrary and capricious, and that the improper calculation resulted in insufficient reimbursement to the plaintiffs for services provided under the Medicaid and Medicare programs for fiscal year 2003.

BACKGROUND

Plaintiffs are hospitals that provide, inter alia, inpatient services to Medicare and Medicaid recipients. Pursuant to the Medicare and Medicaid programs, the hospitals receive reimbursement from the government for services provided to covered patients. The reimbursement amount that the hospitals receive is calculated pursuant to the Secretary's Prospective Payment System. Under this

system, the Secretary prospectively determines the reimbursement rate for all inpatient procedures performed by the hospitals. In determining the amount of the reimbursement, the Secretary first considers the specific nature of the procedure performed. Next, the Secretary considers the average labor costs incurred by hospitals located in the same geographical area as the hospital at which the procedure is performed. By taking into consideration local labor costs, the Secretary is able to adjust reimbursement rates for areas in which labor costs are higher or lower than the national average, and provide higher reimbursement rates to areas with high labor costs, and lower rates to areas with lower labor costs.

To determine the labor costs of a particular geographic area, the Secretary first determines the average hourly wage that is paid to a hospital employee for each hospital nationwide. In general terms, the Secretary determines each hospital's average hourly wage by establishing the hospital's total wage related costs, and dividing that amount by the number of paid hours worked. The Secretary then looks at the hourly wages of hospitals located in a particular geographical area (known as a "Metropolitan Statistical Area," ("MSA")) and compares the average hourly wage of the hospitals within each MSA to the national average.[1] By dividing

---

[1] The plaintiff hospitals are members of the Rochester, New York Metropolitan Statistical Area.

the average hourly wage of the hospitals within each MSA by the average hourly wage of all hospitals in the nation, the Secretary determines the "wage index" of each MSA-a numerical value indicating whether or not the labor costs of the MSA are greater or less than the national average. For example, a wage index number greater than "1" indicates that the average labor costs of the MSA are higher than average national labor costs, whereas an index number of less than "1" indicates that the average labor costs of the MSA are lower than national average costs. Once the Secretary has determined the wage index of each MSA, the Secretary then applies the wage index number to the authorized rate for a given procedure to determine the reimbursement rate applicable to each MSA for that procedure. All hospitals within the MSA will receive the same reimbursement rate for identical procedures, regardless of the actual cost of the procedure.

In the instant case the plaintiffs contend that the Secretary improperly calculated the wage index of the Rochester, New York MSA for fiscal year 2003 because he improperly determined the total number of hours worked by employees of the Rochester General Hospital. Specifically, the plaintiffs contend that the Secretary included as "paid worked hours" time that was actually not worked, because the employees at issue were on short-term disability leave. Plaintiffs contend that these hours should not have been included in determining Rochester General's average hourly wage, and that by

including these hours, the hospital's average hourly wage (and by consequence the average hourly wage of the Rochester, New York MSA) was understated and therefore the reimbursement rate for the MSA was lower than it should have been.

The Secretary contends that the hours in question were properly considered working hours, and notes that Rochester General Hospital initially reported the hours that employees were out on disability as working hours. The plaintiffs counter that Rochester General's initial reporting of the short-term disability hours as working hours stemmed from two anomalies. First, unlike all other hospitals in the Rochester New York MSA, and most other hospitals in the nation, which carry short-term disability insurance through a third-party insurer that pays short-term disability benefits, Rochester General Hospital pays short-term disability benefits directly out of its payroll. It is undisputed that for hospitals which provide short-term disability benefits to employees through an insurer, the disability time taken by employees is not counted as working hours for purposes of determining the hospital's average hourly wage.

Second, with respect to administering the short-term disability benefits, Rochester General Hospital utilizes an accounting mechanism whereby the disability time is recorded as regular working time for purposes of determining each individual employee's disability benefit. Plaintiffs contend that but for the

use of its chosen accounting method, the Secretary would not have considered the disability hours to be working hours, and would not have improperly calculated its average hourly wage.  Indeed the plaintiffs claim that in 2005, Rochester General changed its accounting method, and the Secretary no longer considers the disability hours to be working hours.

Although Rochester General Hospital initially reported the short-term disability hours taken by its employees as working hours, it attempted to amend its report, and remove short-term disability time from its reported working hours.  The Secretary, (through a private, third-party "fiscal intermediary" charged with administering Medicare and Medicaid benefits to participating hospitals) denied Rochester General's application to amend its report, and RGH ultimately appealed that decision to the Provider Reimbursement Review Board, ("PRRB") an independent panel charged with hearing appeals from providers of Medicaid and Medicare services.  On August 31, 2007, in a sharply divided opinion, the PRRB upheld the Secretary's position by a 3 to 2 vote.  The Board's Decision became the final decision of the Secretary on November 2, 2007 when the Secretary, through the Administrator for the Centers for Medicare and Medicaid Services, declined to review the PRRB's Decision.

DISCUSSION

I. <u>The Parties' Motion for Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. <u>Scott v. Harris</u>, 550 U.S. 372, ___; 127 S.Ct. 1769, 1776 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. <u>Scott</u>, 550 U.S. at ___; 127 S.Ct. at 1776 (citing <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-587 (1986)).

II. <u>Standard of Review</u>

Pursuant to the Administrative Procedure Act, the Secretary's determination of the reimbursement rate for medical procedures is entitled to deference, and may only be set aside "if it is arbitrary, capricious, not supported by substantial evidence or otherwise not in accordance with the law." <u>Neiman v. Secretary of Dept. of Health and Human Services of U.S.</u>, 722 F.Supp. 954, 957 (E.D.N.Y., 1988)(citing 5 U.S.C. § 706(2); <u>St. Mary's Hospital v.</u>

Blue Cross & Blue Shield Ass'n, 788 F.2d 888, 890 (2d Cir.1986); Friedman v. Heckler, 765 F.2d 383, 384 (2d Cir.1985). To establish that an agency's decision is arbitrary or capricious, or not made in accordance with substantial evidence or the relevant law, a party must demonstrate that the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43,(1983); see also Bellevue Hosp. Center v. Leavitt, 443 F.3d 163, 174 (2nd Cir., 2006). Substantial evidence required to support an administrators decision is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401,(1971); Gully v. National Credit Union Admin. Bd., 341 F.3d 155, 163 (2nd Cir. 2003). Although courts are to make a "searching and careful" inquiry into the administrator's decision making process, and the facts underlying the administrator's decision, "the ultimate standard of review is . . . narrow[,]" and "[t]he court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park v. Volpe 401 U.S. 402, 416 (1971).

### III. The Secretary's inclusion of disability time as paid working hours was arbitrary and capricious.

### A. The Secretary is required to create a wage index that is accurate and uniform for all hospitals

In the instant case, the Secretary, via his Fiscal Intermediary, determined that short-term disability benefits given to temporarily disabled employees of Rochester General Hospital constituted wages, and therefore the hours that were recorded by Rochester General Hospital for the purpose of determining the amount of each employee's benefit were properly included in the Secretary's determination of the average hourly wage paid to RGH employees. The Secretary made this determination after concluding that Rochester General Hospital treated disability time as paid time off, and that under the regulations established by the Secretary, paid time off is to be included when determining a hospitals average wage. In making this determination, the Secretary relied on the fact that Rochester General made the disability payments directly to employees out of its regular payroll account, and kept track of the employees' disability hours in the same manner that it kept track of normal employment hours for time actually worked. The Secretary also noted that RGH itself referred to the disability plan as "paid time off" or as a "salary continuation plan," and initially reported the disability hours as paid working hours.

While the facts cited by the Secretary in support of his determination are accurate, his conclusion that the short-term disability hours taken by RGH employees should be included in the determination of RGH's average hourly wage is arbitrary and capricious, in that it entirely fails to take into account the paramount consideration that the Secretary, when determining the average hourly wage of each hospital, must treat the costs and hours of each hospital in the same manner, so that the average hourly wages of all hospitals may be accurately compared against one another. It is undisputed that by statute, the Secretary is charged with developing a wage index that reflects the "relative hospital wage level in the geographic area of the hospital compared to the national average hospital wage level." 42 U.S.C. § 1395ww(d)(3)(E); Bellevue Hosp. Center v. Leavitt, 2005 W.L. 486686, *1 (S.D.N.Y., March 1, 2005)("In order to account for wide variations in the cost of labor across the country, the amount of a hospital's payment under the PPS will vary depending on its location.") And while it is further undisputed that the Secretary has great discretion in deciding how to calculate the hospital wage level for all hospitals, it is axiomatic that he must do so in a manner that is accurate, consistent, and uniform. Sarasota Memorial Hospital v. Shalala, 60 F.3d 1507, 1513 (11th Cir., 1995)(in creating the wage index, the Secretary was required to "create a uniform picture of what wage levels were at all provider

hospitals . . . ."); Centra Health, Inc. v. Shalala, 102 F.Supp.2d 654, 660 (W.D. VA, 2000)("the [Medicare] Act requires the Secretary to create a[] [wage] index that accurately represents the relative wage levels of hospitals in a given MSA"); Anna Jacques Hosp. v. Leavitt, 537 F.Supp.2d 24, 31 (D.D.C.,2008)(Secretary is required to conduct an "accurate survey" of hospitals' wages and wage-related costs). Indeed, when Congress amended the Medicare program in 1984, it did so, inter alia, to ensure that the Secretary "develop a more accurate wage index than the one previously used under the former Medicare cost reimbursement program. Sarasota Memorial Hospital, 60 F.3d at 1511 (citing H.R.Rep. No. 432, 98th Cong., 2nd Session pt. II at 1809-10 (1984)). Finally, even the Secretary himself, through the PRRB, has recognized that pursuant to the authority of Sarasota Hospital, "the wage index is compromised if the Secretary does not classify the same items of costs as wages for all providers." DCH Regional Medical Center Tuscaloosa, Alabama, 04-0643, 2006 WL 3050894 (P.R.R.B., August 29, 2006).

    B.    The Secretary failed to create a wage index for the Rochester, New York MSA that is accurate and uniform.

The Secretary's wage index for the Rochester, New York MSA is not accurate or uniform because it treats short-term disability hours utilized by RGH employees differently from short-term

disability hours utilized by employees of other hospitals. Specifically, the Secretary allows hospitals that purchase short-term disability insurance to include the cost of the insurance as a wage expense, but he does not consider the hours that employees spend taking short-term disability benefits as working hours. The result of including the costs of the disability insurance in the wage calculation, but not offsetting those costs with hours worked, is that the average hourly wage of those hospitals purchasing short term disability insurance is increased.

With respect to RGH, however, the Secretary includes both the costs of the short-term disability benefits *and* the hours utilized by hospital employees taking short term disability. Thus, unlike hospitals which purchase short-term disability insurance, the hours utilized by RGH employees taking short-term disability benefits are included in the Secretary's hourly wage calculation, and offset RGH's costs of short-term disability benefits. Accordingly in the case of RGH, the average hourly wage is depressed in comparison to those hospitals that purchase insurance because RGH's costs are offset by hours taken by employees while on short-term disability leave.

The result of the Secretary's decision to treat RGH's short-term disability costs differently than the short-term disability costs of other hospitals is that the average hourly wage calculation for all hospitals is not uniform. Moreover, because

the Secretary's calculation artificially depresses RGH's average hourly wage vis-a-vis hospitals that purchase short term disability insurance, the wage index for the Rochester, New York MSA is lower, and those hospitals located in the Rochester, New York MSA receive a reimbursement rate that is lower than it would be if RGH, like most other hospitals, simply purchased short-term disability insurance through a third party insurer rather than providing those benefits itself.[2]  In sum, the Secretary treats the same benefit (short-term disability payments) differently simply because one hospital pays for it directly and other hospitals provide it through a third party insurer.  Such a result is contrary to the Secretary's obligation to create a wage index that is accurate and uniform.  Sarasota Memorial Hospital, 60 F.3d at 1513 ("The uniformity of the wage index is compromised if the Secretary does not classify the same items of costs as wages for *all* providers.") (emphasis in the original).  Just as the Secretary may not classify the same expenses as "costs" for one hospital but not for another hospital, the Secretary in this case may not disregard the disability hours taken by the employees of some hospitals, but include those hours for other hospitals, simply based on how disability benefits are administered.  See LGH Ltd. v. Sullivan,

---

[2] According to the plaintiffs, RGH chooses to provide short term disability benefits to its employees directly because it is less expensive than purchasing such insurance from a third party.

786 F.Supp. 1047, 1053 (D. D.C., 1992)(Secretary may not distinguish types of costs without a basis for doing so).

The Secretary claims that it cannot include the short-term disability hours of employees who receive such benefits from insurers because there are no hours that correspond to the insured benefits. The Secretary claims that because RGH's short-term disability costs do have associated employment hours, the hours must be considered. I find this argument, however, unavailing. Treating the same benefits differently based on how they are administered directly contravenes the Secretary's obligation to treat similar costs and hours similarly, so that an accurate and uniform comparison of all hospitals wage costs can be made. Sarasota Memorial Hospital, 60 F.3d at 1513; Centra Health, Inc., 102 F.Supp.2d at 660; Anna Jacques Hosp., 537 F.Supp.2d at 31. Moreover, there is no dispute that once RGH changed its accounting methods, but continued to directly pay short-term benefits as it had in the past, the Secretary discontinued inclusion of the disability hours when determining RGH's average hourly wage. Thus the Secretary himself has been inconsistent in his treatment of Rochester General Hospital's short-term disability benefits, and accordingly, his characterization of the RGH's short-term disability benefits is entitled to less deference. Centra Health Inc., 102 F.Supp.2d at 659 ("Less deference is owed to the Secretary's interpretation that is inconsistent with earlier and later pronouncements . . . .") Because under the Secretary's

formula the inclusion or exclusion of disability hours in the determination of a hospital's average hourly wage rests solely on the method in which those benefits are paid, I find that the Secretary has failed to establish a uniform wage index for all hospitals, and therefore, his failure to treat RGH's short-term disability benefits in the same manner as other hospitals' benefits is arbitrary and capricious.

The Secretary contends that his decision is not arbitrary or capricious because as long as he treats all hospitals which provide direct short-term disability payments in a uniform manner, and treats all hospitals that provide such benefits through an insurer uniformly, his methodology must be found to be consistent. I disagree. As stated above, the Secretary is charged with creating a wage index that accurately reflects the wages of hospitals in a local area vis-a-vis the average wages on a national level. <u>Sarasota Memorial Hospital</u>, 60 F.3d at 1513. By treating RGH's short-term disability benefits differently than the benefit plans of the vast majority, if not all of the other hospitals in the nation, the Secretary has artificially depressed the average hourly wage of the Rochester, New York MSA, and therefore, has failed to provide an accurate comparison of wages in the Rochester MSA to wages nationwide.

## CONCLUSION

For the reasons set forth above, I find that the Secretary's decision to include short-term disability hours utilized by

employees of Rochester General Hospital in determining RGH's average hourly wage is arbitrary and capricious, in that inclusion of such hours is inconsistent with the Secretary's lack of inclusion of those hours for hospitals that, unlike RGH, purchase insurance to provide short-term disability benefits.  As a result, the Secretary has failed to carry out his obligation to create a wage index that accurately compares the wages of the Rochester New York MSA to the wages of hospitals nationwide.  Accordingly, I grant plaintiff's motion for summary judgment, and deny defendant's motion for summary judgment, and remand this action to the Secretary for proceedings consistent with this decision.  Specifically, the Secretary shall recalculate RGH's average hourly wage for fiscal year 2003, and in doing so, shall include RGH's short-term disability expenditures, but not the hours taken by RGH employees for short-term disability leave.  Based on the recalculation of RGH's average hourly wage, the Secretary shall create a revised wage index and reimbursement rate for the Rochester, New York, MSA, for fiscal year 2003.

ALL OF THE ABOVE IS SO ORDERED.

 s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         April 14, 2009